# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

MELVIN ROBERTSON,                          :          Case No. 1:12 CV 3042

     Petitioner,                          :

vs.                                        :

TERRY TIBBALS, WARDEN,                     :

                                          :          **MAGISTRATE'S REPORT AND**
                                                        **RECOMMENDATION**

    Respondent.

## I. INTRODUCTION

This case was automatically referred to the undersigned Magistrate Judge for report and recommendation pursuant to 72.2(b)(2) of the UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF OHIO LOCAL CIVIL RULES.  Pending are the Petition for Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2254, Respondent's Return of Writ and supporting Exhibits, Petitioner's First Traverse and Petitioner's Amended Traverse (Docket Nos. 1, 5, 9, 10 & 13) For the reasons set forth below, the Magistrate recommends that the Court deny the Petition for Writ of Habeas Corpus.

## II. FACTUAL AND PROCEDURAL BACKGROUNDS.

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, the determination of factual issues made by a State court shall be presumed to be correct.  28 U. S. C. § 2254(d)(1) (Thomson Reuters 2013).  This statutory presumption of correctness extends to factual findings made by state appellate

courts on the basis of their review of trial court records. *Hardaway v. Withrow,* 305 F.3d 558, 563 (6th Cir. 2002) *cert. denied*, 123 S. Ct. 2078 (2003) (*citing Brumley v. Wingard*, 269 F.3d 629, 637 (6th Cir.2001) (*citing Sumner v. Mata*, 101 S.Ct. 764, 768-769 (1981)).  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *Id.* (*citing* 28 U.S.C. § 2254(e)(1)).

In this case, Court of Appeals for the Eighth District for Cuyahoga County presumed as true the following facts derived from the facts presented in the parties briefs, the trial court's decision and Petitioner's prior appeal:

> On September 23, 2008, the police arrived at Petitioner's home to investigate a reported rape against "S.S.," the victim.  While at Petitioner's home, the police discovered, "B.S.," who was sixteen years old and four months pregnant.  A few days later, the police executed a search warrant on the premises, wherein B.S.'s journal was taken as evidence.  The journal entries revealed that Petitioner was the suspected father of B.S.'s child and further state how Petitioner hit her, punched her, and caused her physical harm.

On October 3, 2008, Petitioner was indicted in Cuyahoga County Common Pleas Court, Case No. CR-516228 for offenses that were alleged to have occurred on September 21, 2008:

Count One    Rape, a violation of OHIO REV. CODE § 2907.02(A)(2) with specifications:
        a.     Sexually violent predator, a violation of OHIO REV. CODE § 2941.148.
        b.     Notice of prior conviction, a violation of OHIO REV. CODE § 2903.11.
        c.     Repeat violent offender specification, a violation of OHIO REV. CODE § 2903.11.

Count Two    Kidnaping, a violation of OHIO REV. CODE § 2905.01 (A)(2) and/or (A)(4), with specifications:
        a.     Sexual motivation, a violation of OHIO REV. CODE § 2941.147.
        b.     Notice of prior conviction, a violation of OHIO REV. CODE § 2903.11.
        c.     Repeat violent offender specification, a violation of OHIO REV. CODE § 2903.11 (Docket No. 9, pp. 4-6 of 241; *State v. Robertson*, 2010 WL 2539656, *1 (2010)).

On October 9, 2008, Petitioner pled not guilty to the indictment (Docket No. 9, p. 7 of 241).  Petitioner's motion to bifurcate the sexually violent predator specification and notice of

2

prior conviction repeat offender specifications in Counts one and two was granted (Docket No. 9, p. 10 of 241).  On August 14, 2009, Judge Eileen T. Gallagher declared a mistrial as to Counts one and two with the sexual motivation specification for the reason that the jury could not reach a unanimous verdict.  As to the remaining specifications, they too, were "considered a mistrial" (Docket No. 9, p. 11 of 241).

On October 5, 2009, Petitioner waived  his right to a jury trial  (Docket No. 9, p. 12 of 241).  The case ultimately proceeded to trial.  Petitioner was acquitted of the kidnaping count but found guilty of the rape and attached repeat violent offender and notice of prior conviction specifications.

The trial court filed a corrected journal entry on December 24, 2009, in which Petitioner was sentenced to 10 years on Count one of rape to run consecutive to eight years on the repeat violent offender specification, a life sentence on sexually violent predator specification, mandatory time on notice of prior conviction, for a total of 18 years to life in prison and mandatory five years post-control release[1] (Docket No. 9, p. 19 of 241).  Petitioner was deemed a Tier III sex offender under OHIO REV. CODE § 2950.01(G).[2]

Petitioner filed a notice of appeal with the Eighth District Court of Appeals, Cuyahoga County, on January 15, 2010 from the December 24, 2009 judgment (Docket No. 9, pp. 22-23 of 241).  In his brief on the merits, Petitioner, by and through counsel, asserted six assignments of error:

---

[1]

The journal entry filed on December 17, 2009, inadvertently omitted the sentence of 18 years (Docket No. 10, p. 13 of 241).

[2]

Petitioner was classified as a "Tier III sex offender/child-victim offender" as defined in OHIO REV. CODE § 2950.01, based on violation of Sections 2907.02.

3

1. The trial court erred in denying Petitioner's motion for acquittal filed pursuant to OHIO CRIM. R. 29 when there was insufficient evidence to prove the elements of rape.
2. Petitioner's conviction for rape was against the manifest weight of the evidence.
3. The trial court erred in admitting certain other acts evidence.
4. Petitioner was denied a fair trial as the result of prosecutorial misconduct.
5. Petitioner was denied a fair trial as a result of the state's failure to disclose exculpatory evidence or Brady material.
6. The trial court erred in convicting and sentencing Petitioner on the sexually violent predator specification (Docket No. 9, p. 27 of 241).

The Court of Appeals for the Eighth Appellate District affirmed the conviction and sentence on January 27, 2011 (Docket No. 9, p. 78 of 241).  Petitioner, *pro se,* filed a notice of appeal in the Supreme Court of Ohio on March 10, 2011 (Docket No. 9, pp. 98-100 of 241).  In the memorandum in support of jurisdiction, Petitioner, *pro se,* asserted four propositions of law:

1. Petitioner's Fifth and Fourteenth Amendment rights were violated and he was deprived of a fair hearing when the State failed to disclose  requested exculpatory evidence.
2. Petitioner was denied effective assistance of counsel as guaranteed him under the Sixth Amendment.
3. Petitioner was denied a fair trial as a result of prosecutorial misconduct which violated his right to compulsory process under the Sixth Amendment.
4. There was insufficient evidence to support the elements and conviction of rape (Docket No. 9, p. 102 of 241).

On May 4, 2011, Chief Justice Maureen O'Connor denied leave to appeal and dismissed the appeal as not involving a substantial constitutional question (Docket No. 9, p. 141 of 241).

On April 5, 2011, Petitioner, *pro se,* filed an application for reopening of his appeal pursuant to App.R.26(B).  He alleged:

1. Appellate counsel was ineffective for failing to raise the issue that the trial court committed prejudicial error by permitting an expert witness to give testimony that improperly bolstered the credibility of the alleged victim in violation of the due process and fair trial provisions of the federal constitution, the Ohio Rules of Evidence and the Ohio Supreme Court's decision in *State v. Boston.*
2. Appellate counsel was ineffective for failing to raise the issue that Petitioner's conviction was obtained from perjured testimony knowingly used by the prosecution in violation of the due process and fair trial clauses of the federal

constitution.

3.  Petitioner was denied the effective assistance of counsel required by the United States Constitution.

4.  Appellate counsel was ineffective for failing to raise the issue that the trial court committed prejudicial error . . . by sustaining the prosecutor's objection in a key area during cross-examination that imposed restrictions and violations of Petitioner's constitutional guarantee of the Sixth Amendment right to effective confrontation.

5.  Appellate counsel was constitutionally ineffective under the Sixth and Fourteenth Amendments to the federal constitution when he failed to raise the cumulative effect of the errors contained in the propositions of law one, two and four and their cumulative effect on the fundamental fairness of the trial (Docket No. 9, p. 142; 144-151 of 241).

The court of appeals denied the application on September 16, 2011 and on October 26, 2011, Petitioner lodged a notice of appeal in the Supreme Court of Ohio (Docket No. 9, p. 166; 176; 194 of 241).  In his memorandum in support of jurisdiction, Petitioner reasserted the five propositions of law alleged in the underlying application for reopening (Docket No. 9, p. 180 of 241).  On December 21, 2011, Chief Justice O'Connor dismissed the appeal as not involving any substantial constitutional question (Docket No. 9, p. 206 of 241).

On December 13, 2012, Petitioner filed a Petition for Writ of Habeas in this Court, alleging:

1.  The trial court erred in admitting prejudicial opinion evidence.

2.  Appellate counsel was ineffective.

3.  Prosecutorial misconduct was so flagrant and prejudicial as to render the trial fundamentally unfair.

4.  The trial court erred in admitting unfairly prejudicial evidence that BS was his girlfriend, he lived with her and he impregnated her.

5.  Petitioner's conviction is void and/or voidable because of cumulative errors (Docket No. 1, pp. 8-18 of 18).

5

### III. THE STATUTE OF LIMITATIONS.

Under the ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT of 1996 (AEDPA), there is a one year statute of limitations that applies to the application of a writ of habeas corpus filed by a person in custody pursuant to a state court. *Keeling v. Warden, Lebanon Correctional Institution*, 673 F.3d 452, 458 (6th Cir. 2012) *cert. denied*, 133 S. Ct. 141 (2012) (*citing* 28 U.S.C. § 2244(d)(1)). This statute of limitations begins to run from the latest of:

(A)     the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)     the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)     the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)     the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.* at 458-459 (*citing* 28 U.S.C. § 2244(d)(1)(A)–(D)).

Pursuant to Section 2244, the limitations period is tolled for the 90-day period in which a petitioner could seek *certiorari* in the United States Supreme Court. *DeDonno v. Hurley,* 2008 WL 20482059, *5 (N.D.Ohio, 2008) (*See Lawrence v. Florida*, 127 S.Ct. 1079 (2007)).

Because Petitioner's claims do not implicate Sections 2244(d)(1)(B), (C) or (D), the statute of limitations began to run at the expiration of the time for seeking *certiorari* in the United States Supreme Court. The statute began to run on March 21, 2012 and it expired on March 21, 2013. Petitioner's Petition for Writ of Habeas Corpus was timely filed on December 13, 2012.

The Magistrate must next determine whether Petitioner complied with the procedural

6

rules for bringing his claims in state court and whether the state court enforced the procedural rules in Petitioner's case.

### IV.  PROCEDURAL DEFAULT STANDARD OF REVIEW.

Pursuant to 28 U. S. C. § 2254, there are constraints placed on this federal habeas court before granting a timely filed application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  *Doan v. Carter*, 548 F. 3d 449, 454 (6th Cir. 2008) *cert. denied,* 130 S. Ct. 366 (2009) (*citing Williams v. Taylor*, *supra,* 120 S. Ct. at 1523).  Habeas review is limited to non-time barred claims for relief that have been fully exhausted in state court.  *Id.*

The federal habeas court is not a forum for trying facts and issues which a petitioner failed to pursue in state proceedings.  *Seymour v. Walker*, 224 F.3d 542, 549 (6th Cir. 2000) *cert. denied*, 121 S. Ct. 1643 (2001).  When a habeas petitioner fails to obtain consideration of a claim by a state court, either due to the petitioner's failure to raise that claim before the state courts while state court remedies were still available or due to a state procedural rule that prevented the state courts from reaching the merits of the claim, that claim is procedurally defaulted.  *Id*. at 549-550.  A federal court will review a defaulted claim only if a petitioner "show[s] that there was cause for the default and prejudice resulting from the default, or that a miscarriage of justice will result from enforcing the procedural default."  *Id*. at 550.

A petitioner must fairly present to the state courts either the substance of or the substantial equivalent of the federal claim that he is presenting to a federal habeas court. *Trimble v. Bobby,* 2013 WL 1155594, *11 (N.D.Ohio,2013) (*citing Hicks v. Straub*, 377 F.3d

7

538, 552 (6th Cir.2004)).  "To fairly present a claim to a state court a petitioner must assert both

the legal and factual basis for his or her claim.  *Id.* (*citing Williams v. Anderson*, 460 F.3d 789,

806 (6th Cir.2006))**.**  To determine whether a federal legal claim has been fairly presented to the

state court, a federal habeas court considers whether:

> 1) the petitioner phrased the federal claim in terms of the pertinent constitutional
> law or in terms sufficiently particular to allege a denial of the specific
> constitutional right in question; 2) the petitioner relied upon federal cases
> employing the constitutional analysis in question; 3) the petitioner relied upon
> state cases employing the federal constitutional analysis in question; or 4) the
> petitioner alleged "facts well within the mainstream of [the pertinent]
> constitutional law."  *Id.* at *12 (*citing Hicks, supra*, 377 F.3d at 553 (*quoting
> McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir.2000)).

1.    **PETITIONER'S FIRST CLAIM: THE TRIAL COURT ERRED IN ADMITTING PREJUDICIAL**
       **OPINION EVIDENCE**

Petitioner concurs that the first claim for relief–the trial court erred in admitting prejudicial

opinion evidence of Justin Barnhart--was not fairly presented on direct appeal or in his

application to reopen.  Nevertheless, Petitioner urges the Court to find that he presented the

substantial equivalence of this claim in his first assignment of error in his application to reopen

under OHIO APP. R. 26(B) to the state courts.

While Petitioner raised sufficiency and manifest weight of the evidence claims, he did

not challenge the admission of Justin Barnhart's testimony.  Instead, he attacked the sufficiency

of  the  victim's  testimony  and  the  rationale  behind  the  consensual  nature  of  his  sexual

relationship with the victim.  Claims presented on these grounds address different core concerns.

The issues relating to the victim's testimony focused upon her credibility and the circumstances

under which out of court statements and behaviors could be admitted into evidence.  The crux of

8

the testimony elicited from Justin Barnhart was focused on directly implicating Petitioner despite the victim's testimony. The legal theory and facts on which Petitioner's federal habeas claim rests, have not been presented to the state court. The Magistrate finds that Petitioner's first claim was not substantially equivalent to any issues litigated in the state court.

However, Petitioner preserved his first claim in the RULE 26(B) application as a basis for appellate counsel ineffectiveness. Under Ohio law, an application for reopening pursuant to OHIO APP. R. 26(B) motion is a procedural mechanism for raising claims of appellate counsel's ineffectiveness, not for exhausting underlying constitutional claims that were omitted from the direct appeal in the first place. The only claims that can be preserved in a RULE 26(B) application for reopening are claims of ineffective assistance of appellate counsel.

The Magistrate will address whether this claim is foreclosed from review under the controlling precedent of *Maupin v. Smith,* 785 F. 2d 135, 138 (6th Cir. 1986).

2. **PETITIONER'S SECOND AND THIRD CLAIMS: APPELLATE COUNSEL WAS INEFFECTIVE AND PREJUDICIAL PROSECUTORIAL MISCONDUCT RENDERED THE TRIAL FUNDAMENTALLY UNFAIR**

Petitioner presented his second and third claims in the direct appeal to the Supreme Court of Ohio. The Magistrate will address the merits of these claims in subsequent sections of this Report and Recommendation.

3. **PETITIONER'S FOURTH CLAIM: THE TRIAL COURT ERRED IN ADMITTING UNFAIRLY PREJUDICIAL EVIDENCE RELATING TO BS**

Petitioner concedes that he failed to present a claim challenging the extreme prejudice he suffered from the mention of the victim's age during trial. Again, Petitioner urges the Court to find that he presented the substantial equivalence of this claim in his fourth assignment of error to the state court.

9

Not only must the facts presented to the state courts and the federal habeas courts be the same but the legal theories based on those facts presented to the state courts must be the same legal theories presented to the federal habeas court.  Here, there is also a lack of clarity as to what was presented to the state courts that would be substantially equivalent to the claim presented here.  Based on Petitioner's concession that this claim was not fairly presented to the state courts, the Magistrate finds that it is not the substantial equivalent of Petitioner' habeas claim.

Nothing in his Rule 26(B) application can be construed as a preservation of his fourth claim as a basis for appellate counsel ineffectiveness (Docket No. 9, pp. 142-152 of 241).  The Magistrate will address whether this claim is foreclosed from review under *Maupin v. Smith*.

**4.**  **PETITIONER'S FIFTH CLAIM: THE CONVICTION IS VOID AND/OR VOIDABLE DUE TO CUMULATIVE ERRORS**

Petitioner contends that the Writ should be granted based on cumulative error.  The Magistrate finds that this claim suffers from the same fate as claim four.  Not only was the cumulative error not raised at every level of the state court's direct or collateral review, the aggregate presentation of issues failed to satisfy the substantial equivalent of any claims presented to the state courts.  Based on Petitioner's concession that this claim was not fairly presented to the state exhaustion requirement, the Magistrate will address the merits of the claim if it survives the *Maupin* analysis.

**V. *MAUPIN V. SMITH* STANDARD OF REVIEW.**

Respondent argues that claims one, four and five are precluded by Petitioner's failure to observe a state procedural rule, the federal court must go through a detaileed analysis.  For noncompliance with a state procedural rule to serve as a bar to habeas review, the state

procedure must satisfy the standards set forth in the seminal case of *Maupin v. Smith*, 785 F.2d

135, 139 (6th Cir. 1986). *Scott v. Brunsman*, 695 F.Supp.2d 771, 779 (N.D.Ohio,2010).

> First, there must be a state procedural rule in place that the petitioner failed to follow. *Id*. (*Smith v. State of Ohio Department of Rehabilitation and Corrections*, 463 F.3d 426, 431 (6th Cir. 2006) (*citing Maupin*, 785 F.2d at 138)). Second, the state court must have actually denied consideration of the petitioner's claim on the ground of the state procedural default. *Id*. (*citing Smith,* 463 F.3d at 501-502). Third, the state procedural rule must be an "adequate and independent state ground to preclude habeas review." *Id*.

1.    **PETITIONER'S FIRST, FOURTH AND FIFTH CLAIM APPLIED TO *MAUPIN* PRINCIPLES**.

Because Petitioner failed to raise issues that appear on the face of the record in his direct

appeal or motion for post-conviction relief, and because Petitioner sought no further action in the

Supreme Court of Ohio, his first and second *Maupin* factors are easily met.

With respect to the first prong of the *Maupin* test, it is undisputed that all facts necessary

to develop Petitioner's first, fourth and fifth claims were available at trial or shortly thereafter

and the Petitioner could have presented such claims without delay.  Under the doctrine of *res

judicata*, a final judgment of conviction bars the convicted defendant from raising and litigating

in any proceeding, except an appeal from that judgment, any defense or any claimed lack of due

process that was raised or could have been raised by the defendant at the trial which resulted in

that judgment of conviction or on an appeal from that judgment.  *State v. Perry*, 10 Ohio St.2d

175, 226 N.E.2d 104, 108 (1967).

It is well established in the Sixth Circuit that *res judicata* is an adequate and independent

state ground sufficient to foreclose habeas review of constitutional errors.  *Dickerson v. Sheldon,*

2013 WL 4060668, *18 (N.D.Ohio,2013) (*citing Coleman v. Mitchell,* 268 F.3d 417, 429 (6th

Cir.2001) *cert. denied,* 122 S.Ct. 1639 (2002)).  The Sixth Circuit has determined that Ohio's

doctrine of *res judicata*, is regularly applied by the Ohio courts. *Jacob v. Mohr,* 265 F. 3d 407, 417 (6th Cir. 2001) (*citing Smith v. Anderson*, 104 F. Supp. 2d 773, 794 (S.D.Ohio, 2000)). And the Sixth Circuit has rejected claims that Ohio has failed to apply the doctrine of *res judicata*, consistently. *Dickerson, supra*, 2013 WL 4060668 at *18 (*citing Greer v. Mitchell*, 264 F. 3d 663, 673 (6th Cir. 2001) (*citing Monzo v. Edwards*, 281 F. 3d 568, 577 (6th Cir. 2002)).

The third *Maupin* factor requires the reviewing court to determine whether the state procedural rule at issue is an adequate and independent state ground upon which to deny habeas review. Petitioner has not advanced an argument that the Ohio procedural rule is not an adequate and independent state ground.

## 2.    THE "CAUSE" AND "PREJUDICE" STANDARDS AND ANALYSIS.

Once the Magistrate determined that a state procedural rule was not complied with and the rule was an adequate and independent state ground, she must ascertain if there was "cause" for Petitioner to not follow the procedural rule and that he was actually "prejudiced" by the alleged constitutional error.

In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate "cause" for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Wogenstahl v. Mitchell,* 668 F.3d 307, 321 (6th Cir. 2012) *cert. denied*, 133 S. Ct. 311 (2012) (*citing Coleman v. Thompson*, 111 S.Ct. 2546, 2565 (1991)). The "cause" for default standard in procedural-default cases requires the petitioner to show that "some objective factor external to the defense impeded counsel's efforts" to raise a claim in the state courts. *Id.* (*citing McCleskey v. Zant,* 111 S.Ct. 1454, 1469 (1991)

(internal quotation marks omitted)).  Such factors may include interference by officials, an attorney error rising to the level of ineffective assistance of counsel, or a showing of a factual or legal basis for a claim that was not reasonably available.  *Id.* (*citing McCleskey*, at 1470).

The prejudice prong is an elusive concept but several guidelines can be discerned from the Supreme Court's pronouncements and the case law interpreting those pronouncements. *Maupin, supra*, 785 F.2d at 139.  First, it is clear that the prejudice that must be shown must be a result of the alleged constitutional violation and not a result of the trial counsel's failure to meet state procedural guidelines.  *Id.* (*See United States v. Frady*, 102 S.Ct. 1584, 1594 (1982) (prejudice must result from the errors of which defendant complained)).  Second, the burden is on the petitioner to show that he or she was prejudiced by the alleged constitutional error.  *Id.* (*citing Frady*, 102 S.Ct. at 1595).  Moreover, the petitioner must show that there was actual prejudice not merely a possibility of prejudice.  *Id.* (*See also Engle v. Isaac*, 102 S.Ct. at 1572). Third, in analyzing a petitioner's contention of prejudice, the court should assume that the petitioner has stated a meritorious constitutional claim.  *Id.*  Thus, the examining court must determine whether the petitioner was prejudiced by his conviction based on allegedly insufficient evidence.  *Id.*

Petitioner alludes to the ineffective assistance of appellate counsel as a cause for excusing his failure to fairly present his first and fifth grounds for relief on direct appeal. Arguably, these claims were presented in his application to reopen and the court of appeals addressed such claims on their merit.  The court found that counsel's assistance did not fall short of constitutionally effective assistance of counsel.

It is well established that valid claims of ineffective assistance of counsel may constitute cause to excuse a procedural default if presented to the state courts as an independent claim

13

before it can be used to establish cause for a procedural default.  There are four important reasons that in this case, the claims of ineffective assistance of counsel fail to excuse the procedural default.  First, Petitioner failed to overcome the presumed correctness of the appellate court's findings, and show anything more than the possibility that the errors at trial worked to substantial disadvantage.  Second, Petitioner failed to demonstrate that the admission of the opinion evidence in question or the failure to consider the cumulative error was actually material to showing the probability of prejudice sufficient to undermine confidence in the outcome of the trial.  Third, Petitioner failed to show that the admission of opinion evidence and the failure to consider the cumulative errors at trial infected the trial with any error of constitutional dimension.  Fourth, Petitioner failed to show that the alleged errors created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.

Petitioner's first and fifth claims are procedurally defaulted.  The Magistrate will not conduct a merit analysis of claims one and five.

### 3.    FUNDAMENTAL MISCARRIAGE OF JUSTICE STANDARD AND ANALYSIS.

Even though Petitioner has not shown "cause and prejudice," he may overcome the procedural default by showing that the failure to consider his claims will result in a fundamental miscarriage of justice.

A fundamental miscarriage of justice results when one who is actually innocent is convicted.  *Gibbs v. United States*, 655 F.3d 473, 477 (6th Cir. 2011) *cert. denied,* 132 S. Ct. 1909 (2012).  "Actual innocence" is an extremely narrow exception, and "claims of actual innocence are rarely successful."  *Id.* (*citing Schlup v. Delo*, 115 S.Ct. 851, 864 (1995)).  Moreover, "a claim of 'actual innocence' is not itself a constitutional claim, but instead a

14

gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Id.* (*citing Herrera v. Collins*, 113 S.Ct. 853, 862 (1993)).

Although there is some ambiguity as to whether Petitioner engaged in consensual intercourse with the victim or he did not engage in intercourse at all, the tenor of his Petitioner's Traverse and Amended Traverse is that there were elements of fundamental prejudice that resulted in unjust incarceration.  For purposes of his pleadings, Petitioner suggests that did not engage in sexual activity with S.S.  Inherent in this allegation is an assumption that Petitioner was actually innocent of the crimes for which he was convicted.  However, Petitioner failed to open the miscarriage of justice gateway for reasons that he failed to proffer new evidence showing that a constitutional violation has probably resulted in the conviction of one who is actually innocent.  Further, Petitioner has failed to show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence.  The failure to meet this miscarriage of justice exception precludes review of Petitioner's procedurally defaulted challenge to his first, fourth and fifth claims.

In conclusion, Petitioner is bound by his procedural default and he cannot obtain habeas review of his first, fourth and fifth grounds for relief for the reason that he has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule; he has not demonstrated "cause" for the default and actual prejudice as a result of the alleged violation of federal law; or demonstrated that failure to consider the claims will result in a fundamental miscarriage of justice.

## VI. HABEAS STANDARD OF REVIEW.

Petitioner has overcome the procedural barriers of time limitation, exhaustion and procedural default for his second and third claims.  Habeas review of these claims is made

through the deferential standard of review mandated in Section 2254(d) of the AEDPA, which

states:

> A timely filed application for a writ of habeas corpus on behalf of a person in custody shall not be granted with respect to any claim adjudicated on the merits in state court proceedings unless the adjudication of the claim—
>
> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (Thomson Reuters 2013).

"Clearly established federal law," for the purposes of § 2254(d)(1), refers to rulings of the

United States Supreme Court in place at the time of "the last state-court adjudication on the

merits." *Dickerson, supra*, 2013 WL 4060668, at *19 (*citing Greene v. Fisher*, 132 S.Ct. 38, 44,

(2011)).  A decision is "contrary to" clearly established federal law under § 2254(d)(1) if "the

state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question

of law or if the state court decides a case differently than [the Supreme Court] on a set of

materially indistinguishable facts."  *Id*. (*citing Lovins v. Parker,* 712 F. 3d 283, 293–294 (6th Cir.

2013) (*citing Williams v. Taylor*, 120 S.Ct. 1495, 1523 (2000)).

A state-court decision unreasonably applies clearly established federal law if "the state

court identifies the correct governing legal principle from [the Supreme Court's] decisions but

unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at *20 (*citing Lovins*,

supra, 712 F. 3d at 294).  The more general the rule, the more leeway courts have in reaching

outcomes in case-by-case determinations.  *Id.* (*citing Harrington v. Richter*, 131 S.Ct. 770, 786

(2011) (*quoting Yarborough v. Alvarado*, 124 S.Ct. 2140, 2149 (2004)).

16

## VII. ANALYSIS OF PETITIONER'S SECOND CLAIM.

Plaintiff claims that he is entitled to relief because appellate counsel misinterpreted the theory of the underlying criminal case.  Petitioner urges the Court to refrain from presuming that appellate counsel's misinterpretation of the argument was part of a strategic defense.

It is well established that the right to counsel is the right to the effective assistance of counsel.  *United States v. Cronic*, 104 S. Ct. 2039 (1984).  Ineffective assistance of counsel is grounds for habeas corpus relief under 28 U.S.C.A. § 2254, regardless of the nature of the underlying attorney error, but only so long as the lack of effective assistance occurred at a stage of the legal proceedings in which the petitioner had a federal constitutional right to counsel. *Coleman v. Thompson,* 111 S.Ct. 2546, 2565-2566 (1991).

Claims of ineffective assistance of appellate counsel are subject to the *Strickland* test[3], which requires a defendant to show both deficient representation and prejudice.  *Evans v. Hudson,* 575 F.3d 560, 564 (6th Cir. 2009) (*citing Mahdi v. Bagley*, 522 F. 3d 631, 636 (6th Cir. 2008) *cert. denied*, 129 S. Ct. 1986 (2009)).  To meet this burden, "a petitioner must show that the performance of counsel fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* (*citing Burton v. Renico*, 391 F.3d 764, 773 (6th Cir.2004) *cert. denied,* 126 S. Ct. 353 (2005) (internal quotation marks omitted); *see also Maples v. Stegall*, 340

---

[3]

The Supreme Court of the United States in *Strickland v. Washington*, 104 S. Ct. 2052 (1984), established the proper standard for attorney performance and whether the performance constitutes reasonably effective assistance.

F.3d 433, 437 (2003)).  When evaluating the issue of ineffective assistance of appellate counsel, a review of the appellate proceedings must be conducted to determine whether prejudice is shown. *Id.* (*citing Mapes v. Tate*, 388 F.3d 187, 194 (6th Cir.2004) (noting that prejudice is shown if "there is 'a reasonable probability that, but for his counsel's [failings]  . . . , [the defendant] would have prevailed on his appeal' ") (alterations in original) (*quoting Smith v. Robbins*, 120 S.Ct. 746, 764-765d.2d 756 (2000)).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* (*citing Burton*, *supra*, 391 F.3d at 773) (internal quotation marks omitted); *Maples, supra*, 340 F.3d at 437).

Petitioner alleges a specific, serious omission or overt act upon which the claim of ineffective assistance of appellate counsel is based.  The underlying theory of Petitioner's state case was that he did not have sex with S.S.  Appellate counsel argued that sexual intercourse with S.S. was consensual.

At trial, S.S. testified about the events leading up to, including the alleged rape and its aftermath.  Trial counsel failed to call Petitioner or an expert witness to testify.  Neither did trial counsel provide key evidence which would shed more doubt on the prosecution's case.   The following is a synopsis of the testimony that was presented to the jurors:

> S.S. befriended Brandy, Petitioner's friend, on MYSPACE; Brandy picked Sharon up and took her to a place where Petitioner was located; while there, Petitioner used a condom and raped S.S.; portions of this visit were videotaped; and S.S. confided in her best friend, LaTonya, that she was raped.  At trial, Brandy invoked the Fifth Amendment privilege and refused to testify.  Justin Barnhart, a forensic scientist, examined the rape kit but did not testify that he linked any of Petitioner's DNA, fluids or skin to S.S. (Docket No. 6-2, pp. 34-54; 59-79; 88-94 of 259; Docket No. 6-3, p. 121 of 241).

Deference must be given to the wide latitude appellate counsel had in determining how to best represent Petitioner in the appeal.  Paying particular attention to defense counsel's closing

argument made to the jury, the following excerpts were material:

> I also want to deal with the 20,000-pound elephant in the room.  When you hear the prosecutor speak, you will hear the word kid come out of their mouths 50,000 times.  This kid, this kid, this kid.  In voir dire I had a conversation with you about distinguishing between morality and legality.  And if it were illegal to try to have consensual sex or having consensual sex with a 17-year old, he would be here for that.  So when they want to keep getting on that pony of age and riding it through, hoping that you convict him for that reason, then they have lost their way because they can't focus on the evidence. . . .

> Now if it's about that, you can convict him on morality all day, but if it's about the evidence, you have to look at whom you are dealing with, who is making the allegation.  And you know she is a troubled young woman, even through her own family.  She is at home text messaging 90 percent of her time throughout the day.  Her mother told us that she was expelled as the result of attitude issues, fighting, whatever it may have been.  You know there are no controls at the home.  17, this little girl, right.  You look at the top right-hand photo and you tell me that you have the appearance of a little girl. . . . He may be in his 30's but she is 17 going on 40.

> You have to find Petitioner not guilty of rape because he never had a forcible sexual encounter with this young lady.   You have to find him not guilty of kidnaping (Docket No. 6-3, pp. 173; 174; 175; 195 of 241).

Petitioner's mere disagreement with the argument used by appellate counsel is insufficient to overcome the presumption that the challenged conduct of appellate counsel was a matter of strategy.  The Magistrate declines to second guess appellate counsel's strategic decision to present or forego a theory of innocence when that decision is unreasonable given trial counsel's closing argument.

In the second claim, Petitioner asserts an argument that appellate counsel failed to raise in the appeal the improper restriction of cross-examination of the victim.   Defense counsel attempted to rebut S.S.'s testimony that she felt uncomfortable around Petitioner by unfairly limiting this line of cross-examination.

Q.     Have you had a chance to see the video?

A.      Yes.

Q.      Now, [Petitioner] is sitting right here and you are right behind his right shoulder, correct?

A.      Where.

Q.      He is sitting here.  If you need to come around and see you are more than welcome to.  Just stand where I was standing.  You see [Petitioner] sitting right here?

A.      Yeah.

Q.      You are standing right there, correct, is that correct?

A.      Yes . . .

Q       . . . do you know what you were wearing right there?

    The Court:            You need to answer, Ms. Sanchez.  Turn to the jurors so that
                         they can hear you.  And loud and slow.

A.      Sweat pants and a tank top.

Q.      Sweat pants and a tank top.  Your sweat pants, the tank top is somewhat short.

You can see your navel area and part of your waist exposed, right?

    Mr. Driscoll:        Objection, your honor.
    The Court:           Sustained.

A.      Yes, what does that have to do with anything?

    The Court:           Do you want to approach on this one?
    Mr. Mack:            If we may.
    The Court:           Ms. Sanchez, do you want to take a seat.

Thereupon a discussion was had between Court and counsel at a sidebar.

(Docket No. 6-2, pp. 189-190 of 259).

Although the Confrontation Clause protects a defendant's right to cross-examine

20

witnesses, this right is not absolute. *Jordan v. Warden, Lebanon Correctional Institution*, 675 F.3d 586, 594 (6<sup>th</sup>Cir. 2012). Rather, the Constitution guarantees only "an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Id.* (*citing Delaware v. Fensterer*, 106 S.Ct. 292, 294-295 (1985) (emphasis in original)). The Supreme Court has recognized that "trial judges retain wide latitude . . . to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Id.* (*citing Delaware v. Van Arsdall*, 106 S.Ct. 1431, 1435 (1986))

Before the testimony was limited, trial counsel was successful in exposing to the jury facts about S.S.'s dress, from which the jury could appropriately draw inferences relating to S.S.'s credibility. However, the trial court exercised its discretion to curtail counsel's cross-examination of S.S. because the content and details of her clothing worn during the "photo session" were not probative or material to a fact at issue in the case. Imposing such limitations did not infringe upon the protections afforded Petitioner under the Confrontation Clause. The Magistrate is not persuaded that appellate counsel performed deficiently to Petitioner's prejudice by failing to raise as error, the trial court's decision to limit, not quash, trial counsel's attempt at effectively cross-examining S.S.

VIII.   **ANALYSIS OF PETITIONER'S THIRD CLAIM**.

Here, Petitioner argues that the prosecutor's acts were so flagrant and prejudicial as to render the trial fundamentally unfair. Petitioner contends that Brandy Skipper was so intimidated by the prosecutor that she exercised her right to refuse to testify.

21

The Sixth Circuit Court employs a two-part test to determine whether prosecutorial misconduct requires a new trial. *Cristini v. McKee,* 526 F.3d 888, 899 (6thCir. 2008) *cert. denied,* 129 S. Ct. 1991 (2009) (*citing Girts v. Yanai*, 501 F.3d 743, 758-59 (6th Cir.2007) *cert. denied,* 129 S. Ct. 92 (2008)). "Under this approach, a court must first consider whether the prosecutor's conduct and remarks were improper," and "then consider and weigh four factors in determining whether the impropriety was flagrant and thus warrants reversal." *Id.* (*citing United States v. Carter*, 236 F.3d 777, 783 (6th Cir.2001) (*citing United States v. Carroll*, 26 F.3d 1380, 1387 (6th Cir.1994)). Those four factors are:

> (1) whether the conduct and remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the conduct or remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) whether the evidence against the defendant was strong.

*Id.* (*citing Carter*, *supra*) (*citing Carroll*, 26 F.3d at 1385); *see also Boyle v. Million*, 201 F.3d 711, 717 (6th Cir.2000)). When considering challenges to a prosecutor's statements at trial, we examine those statements within the context of the trial to determine whether they were equivalent to prejudicial error. *Id.* (*citing Girts*, 501 F.3d at 759).

The issue of whether the prosecutor intimidated Brandy Skipper to the extent that she was afraid to testify was discussed in the motion hearing conducted by the trial court on December 17, 2009. Petitioner apparently filed a request for an order to investigate witness tampering by the prosecutor. During the hearing, the prosecutor advised that she was privy to a telephone call between Petitioner and Brandy Skipper in which Petitioner advised her to swear that the prosecutor intimidated and threatened her (Docket No. 6-4, pp. 43-46 of 151). Brandy Skipper's mother, Candy Riffle, testified that Brandy Skipper received a subpoena to testify and that she left her house during the night. In fact, Brandy was subsequently on the run. A warrant was issued

22

for her arrest for failing to honor the subpoena (Docket No. 6-4, pp. 51-52; 54-58; 59 of 151). Brandy Skipper was represented by counsel when she finally appeared at the trial to testify and she invoked her rights pursuant to the Fifth Amendment.

Without question, the prosecutor was authorized to advise Brandy Skipper of what could happen if she did not comply with the subpoena or if she engaged in perjurious testimony.  The prosecutor was also authorized to seek the arrest of Brandy Skipper for her failure to comply with a court order.  Within the context of the motion hearing, statements made about Brandy Skipper were relatively straightforward and not misleading.  The Magistrate found that there were no disparaging remarks made about Brandy Skipper and found no erroneous comments or statements that were deliberately placed before the jury.

Even assuming that Brandy Skipper was manipulated by Petitioner and the prosecutor, the Magistrate is not persuaded that the prosecution's treatment of Brandy Skipper was so flagrant and prejudicial as to render Petitioner's trial fundamentally unfair

## IX. CONCLUSION

For these reasons, the Magistrate recommends the Court deny the Petition for Writ of Habeas Corpus, deny the certificate of appealability and terminate the referral to the undersigned Magistrate Judge.


/s/Vernelis K. Armstrong
United States Magistrate Judge


Date:          September 18, 2013

## X. NOTICE.

Please take notice that as of this date the Magistrate Judge's report and recommendation attached hereto has been filed.  Pursuant to Rule 72.3(b) of the LOCAL RULES FOR NORTHERN DISTRICT OF OHIO, any party may object to this report and recommendations within fourteen (14) days after being served with a copy thereof.  Failure to file a timely objection within the fourteen-day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure.  The objecting party shall file the written objections with the Clerk of Court, and serve on the Magistrate Judge and all parties, which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections.  Any party may respond to another party's objections within fourteen days after being served with a copy thereof.

Please note that the Sixth Circuit Court of Appeals determined in *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981) that failure to file a timely objection to a Magistrate's report and recommendation foreclosed appeal to the court of appeals.  In *Thomas v. Arn*, 106 S. Ct. 466 (1985), the Supreme Court upheld that authority of the court of appeals to condition the right of appeal on the filing of timely objections to a report and recommendation.